IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

03 JAN 14 AM 8:47

JAMES HUEBNER,

Plaintiff,

v. No. CIV-01-1238-WJ/LCS

CITY OF ROSWELL, a body politic organized and acting under the authority of the Laws of New Mexico, MAYOR BILL OWENS, in his official capacity, and CHIEF RICHARD CAMPBELL, individually and in his official capacity as Chief of the Police Department of the City of Roswell,

Defendants.

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT**

The Defendants, through their attorneys, Atwood, Malone, Turner & Sabin, P.A., of Roswell, New Mexico (Steven L. Bell) and Judy A. Pittman, City Attorney for the City of Roswell, New Mexico, submit this Memorandum in support of their Motion to Set Aside Default Judgment.

**I.**

**STATEMENT OF RELEVANT FACTS THAT SUPPORT SETTING ASIDE THE DEFAULT JUDGMENT.**

1. Plaintiffs James Huebner and C.J. Payton-Huebner were employed by the City of Roswell Police Department (James Huebner as a Police Sergeant whose duties included supervising Police Dispatchers and C.J. Payton-Huebner as a Dispatcher). ***James Huebner Amended Complaint, ¶ 10; C.J. Payton-Huebner Amended Complaint, ¶ 10.***



2. Mr. Huebner and Ms. Payton voluntarily chose to resign their positions with the City of Roswell Police Department during the City's investigation of their actions. ***Affidavit John E. Capps, ¶ 7. (Attached as Exhibit "C" to the Defendants' Motion.)***

3. The City of Roswell's investigation disclosed that Mr. Huebner and Ms. Payton were living together while Mr. Huebner was Ms. Payton's supervising officer. ***Affidavit Capps, ¶ 4.***

4. When asked about the relationship, Mr. Huebner lied and denied it. ***Affidavit Capps, ¶ 4.***

5. The City of Roswell's investigation also disclosed that Mr. Huebner and Ms. Payton were abusing the interdepartmental e-mail system and abusing the City of Roswell's Sick Leave Policy by calling in sick on each others days off. ***Affidavit Capps, ¶¶ 5 and 6.***

6. Mr. Huebner and Ms. Payton-Huebner filed charges of discrimination with the EEOC. ***James Huebner Complaint, ¶ 2; C.J. Payton-Huebner Complaint, ¶ 2.***

7. The EEOC conducted an investigation into the claims brought by Mr. Huebner and Ms. Payton-Huebner and found that it was unable to conclude that a violation of statute had occurred. The EEOC dismissed the charges filed by Mr. Huebner and Ms. Payton-Huebner and issued a Notice of Right to Sue. ***Affidavit Capps, ¶ 3.***

8. Plaintiff filed an Amended Complaint on December 5, 2001 **(Docket No. 3).**

9. The City of Roswell was served with Plaintiff's Amended Complaint on December 13, 2001 **(Docket No. 4).**

10. Mayor Bill Owen was served with Plaintiff's Amended Complaint on December 13, 2001 **(Docket No. 5).**

11. Chief Richard Campbell was served with Plaintiff's Amended Complaint on December 17, 2001 **(Docket No. 6).**

12. On December 14, 2001, Interim Assistant City Attorney Lawrence G. Michelsohn received a copy of the Summons and Amended Complaint filed by the Plaintiff. ***Affidavit Lawrence G. Michelsohn, ¶ 4. (Attached as Exhibit "B" to the Defendants' Motion.)***

13. Pursuant to City of Roswell procedure, Michelsohn forwarded the Summons and Amended Complaint to Roger Blough, City of Roswell Safety Administrator, who was then to transmit the pleadings to Brown & Brown Insurance Company, the City of Roswell's insurance agent, for further handling. ***Affidavit Michelsohn, ¶¶ 3, 5.***

14. Roger A. Blough, Safety Administrator for the City of Roswell, was aware of the specific procedure for forwarding lawsuits to the City of Roswell's insurance carrier. ***Affidavit Roger A. Blough, ¶ 2. (Attached as Exhibit "A" to the Defendants' Motion.)***

15. Pursuant to that procedure, lawsuits are forwarded to Blough's office and he, in turn, delivers them Brown & Brown Insurance Agency for transmittal to the insurer. ***Affidavit Blough, ¶ 3.***

16. Blough specifically recalls receiving a telephone call from Michelsohn regarding the receipt of the Summons and Amended Complaint and believes that he received copies of the pleadings from Michelsohn on December 14, 2001. ***Affidavit Blough, ¶¶ 4, 5.***

17. Blough believes that he confused the Federal Court pleadings with pleadings from the EEOC matter. Blough had previously forwarded to Brown & Brown Insurance Company the EEOC claims filed by Mr. Huebner and Ms. Payton-Huebner, and he knew those claims were being handled by Clea Gutterson of the Civerolo law firm. ***Affidavit Blough, ¶ 6.***

18. Blough failed to forward the Summons and Amended Complaint filed by the Plaintiff to Brown & Brown Insurance Company because he thought the matter was already being handled by the Civerolo law firm and no further action was needed on his part to alert the insurance company. ***Affidavit Blough, ¶ 7.***

19. Blough heard nothing further concerning Plaintiff's Amended Complaint until he was contacted by City Attorney Judy Pittman on January 3, 2003, to find out any information he had on the handling of those pleadings. ***Affidavit Blough, ¶ 8.***

20. Upon Plaintiff's Motion, the Clerk of the United States District entered default against the Defendants on March 18, 2002. ***(Docket No. 9).***

21. The Court entered Final Judgment for the Plaintiff on December 11, 2002. (***Docket No. 26).***

22. On December 20, 2001, City Manager John E. Capps received a letter from the law firm of Keleher & McLeod with copies of the pleadings, including the Court's Memorandum Opinion and Order and Judgment in favor of the Plaintiff. ***Affidavit Capps, ¶ 8.***

23. The letter received December 20, 2002, from the law firm of Keleher & McLeod was the first notice to Capps, the City of Roswell, Bill Owen or Richard Campbell that a default judgment had been entered. ***Affidavit Capps, ¶ 9.***

24. Immediately after receipt of the letter from Keleher & McLeod dated December 20, 2002, Capps contacted the Defendants' insurer, Gulf Insurance Company, to determine why the Defendants were in default. ***Affidavit Capps, ¶ 10.***

25. In a letter dated January 2, 2003, and received by the City of Roswell on January 7, 2003, the Defendants were advised that Gulf Insurance Company had never received copies of

the Summons and Amended Complaint filed by the Plaintiff and that unless the City of Roswell through its own efforts could have the Default Judgment set aside, Gulf Insurance Company would provide no coverage to the Defendants. ***Affidavit Capps, ¶ 11.***

26. Between December 30, 2002 and January 3, 2003, City Attorney Judy Pittman conducted an investigation to determine what had happened to the Summons and Amended Complaint served upon the Defendants. By January 3, 2003, Ms. Pittman determined that the Summons and Amended Complaint had not been forwarded to the insurance company pursuant to the City of Roswell procedures. ***Affidavit Capps, ¶ 12.***

27. On January 7, 2003, the same day City Manager Capps received notification from Gulf Insurance Company that it would provide no coverage, Capps retained this law firm to represent the Defendants in this matter. ***Affidavit Capps, ¶ 13.***

## II.

## THE DEFENDANTS ASK THE COURT TO ASIDE THE JUDGMENT ENTERED DECEMBER 11, 2002, ON THE GROUNDS THAT THEY FAILED TO ANSWER PLAINTIFF'S AMENDED COMPLAINT FOR REASONS CONSTITUTING EXCUSABLE NEGLECT.

The Defendants seek relief from the Default Judgment entered against them pursuant to the terms of Rule 60(b)(1) of the Federal Rules of Civil Procedure which provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

In considering the merits of a Motion made pursuant to Rule 60(b)(1), courts are guided by several important principles. First, the rule should be liberally construed when substantial

justice will be served. ***Thompson v. Kerr-McGee Refining Corp.***, 660 F.2d 1380, 1385 (10th Cir. 1981) ***cert. denied***, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982) (citing ***Pierce v. Cook & Co.***, 518 F.2d 720, 722 (10th Cir. 1975,(en banc)). ***See also, Greenwood Explorations, LTD. v. Merit Gas & Oil Corp., Inc.***, 837 F.2d 423, 426 (10th Cir. 1988). Second, default judgments are generally disfavored, and thus every effort should be made to try each case upon its merits. ***See Gomes v. Williams***, 420 F.2d 1364, 1366 (10th Cir. 1970). ***See also, Pelican Production Corp. v. Marino,*** 893 F.2d 1143, 1146 (10th Cir. 1990). Finally, a trial court applying the judicial preference against default judgments must consider social goals, justice and expediency as part of a weighing process which lies largely within its ambit of discretion. ***Id.***

A trial court determines whether or not a party's stated reasons for an action constitute "excusable neglect" after reviewing the facts and circumstances of each case. ***Buckley v. United States***, 382 F.2d 611, 614 (10th Cir. 1967). In reviewing the facts and circumstances of each case, the court should resolve all doubts in favor of the party seeking relief. ***Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.,*** 715 F.2d 1442, 1445 (10th Cir. 1983).

In ***Pioneer Inv. Services, Co. v. Brunswick Associates LTD Partnership***, 507 U.S. 380, 113 S.Ct. 1489 (1993), the Court provided additional guidance as to the definition of "excusable neglect". The Court stated for Rule 60(b) purposes, "excusable neglect" is understood to include situations in which the failure to comply with a filing deadline is attributable to negligence. ***Id.*** at 394, 1497. In ***Clawson v. Southwest Cardiology Assoc.'s,*** No. CIV-99-379 (D.N.M. 2000)(Mem), a copy of which is attached hereto as Exhibit "A", the Court further discussed the United States Supreme Court's interpretation of the term "excusable neglect", stating that it encompasses late filings caused by inadvertence, mistake or carelessness.

In *TransAmerica Ins. Corp. v. Grindmaster Corp.*, No. CIV 90-530 (D.N.M. 1991)(Mem), a copy of which is attached hereto as Exhibit "B", the Court provided further guidance as to the meaning of the term "excusable neglect". In that case, the defendant intended to make an Offer of Judgment to both named plaintiffs. Through an error characterized as a "clerical mistake" the Offer of Judgment was extended to only one of them. In addition, the defendant made the further mistake of neglecting to include language in the Offer stating the defendant's intention to make the offer contingent upon acceptance by both plaintiffs. The defendant submitted a motion to withdraw and strike the Offer of Judgment. The Court treated the Motion as a request for relief under Rule 60(b)(1), and granted the motion on grounds of excusable neglect. The Court found that the defendant's affidavits established that it failed to address the Offer of Judgment to both plaintiffs as a result of inadvertence and mistake and that given the nature of the mistake, it would be unjust to deny the relief sought.

In *McVicker v. Donnelly,* 95 F.R.D. 353 (E.D. Pa. 1982), the Court considered a Motion to Set Aside Default Judgment in a factually similar circumstance. In that case, the defendant was a witness to an automobile accident and had been scheduled to testify in court. He was subsequently served with a complaint naming him as a defendant in the same action. He mistakenly believed that the papers served upon him involved his role as a witness rather than as a defendant and he therefore failed to answer the complaint. The Court held that the confusion resulting from the time proximity and subject matter similarity of the two proceedings constituted excusable neglect. *Id.* at 355.

In the instant case, the City of Roswell, Mayor Owen and Chief Campbell failed to answer Plaintiff's Amended Complaint because the City of Roswell Safety Administrator confused the

Amended Complaint with EEOC pleadings that he knew were being handled by a law firm retained by the City's insurer. Mr. Blough's actions were clearly a mistake and the result of his negligent failure to properly distinguish between the two pleadings. His actions were neither intentional nor in willful disregard of the United States District Court.

It is for this Court to determine, within its discretion, whether or not the Default Judgment should be set aside. The Defendants respectfully request that the Court consider the liberal construction of Rule 60(b), the fact that default judgments are generally disfavored and that in considering the facts and circumstances surrounding the default, all doubts should be resolved in favor of the party seeking relief.

## III.

## THE DEFENDANTS HAVE A MERITORIOUS DEFENSE TO PLAINTIFF'S COMPLAINT, AND PLAINTIFF WILL NOT BE PREJUDICED BY SETTING ASIDE THE DEFAULT JUDGMENT.

The Statement of Facts set forth above demonstrates that the Defendants have a meritorious defense to this action. The EEOC concluded that the charges filed by the Plaintiff should be dismissed. In addition, the City of Roswell's own investigation disclosed that the Plaintiffs' conduct was in violation of City policy, that the Plaintiffs lied about their relationship, abused the City of Roswell's e-mail system and abused the City of Roswell's Sick Leave Policy. Finally, the facts set forth above disclosed that the Plaintiffs voluntarily chose to resign their positions. The Defendants have submitted a verified Answer to Plaintiffs' Amended Complaint, attached to their Motion to Set Aside Default Judgment. In that verified Answer, the Defendants deny the primary allegations contained in Plaintiffs' Amended Complaint and raise several affirmative defenses, including the Plaintiffs' failure to mitigate damages.

In determining whether or not the Defendants have demonstrated a meritorious defense, the Court will deem true the movant's version of the facts and circumstances supporting its defense. ***Stone v. Stone,*** 588 F.2d 1316, 1319 (10th Cir. 1978). The Defendants' factual allegations may be satisfactorily presented in the written motion itself, in an appended proposed answer or in attached affidavits. ***Id.*** at 1320.

Plaintiff will not be prejudiced by setting aside the Default Judgment. Prejudice, in this context, is ordinarily understood not to include the fact that the default judgment is set aside and that the party will have to prosecute the claim on its merits. ***See*** 10A C.Wright, A. Miller, & C. Cooper, ***Fed. Prac. & Proc. Civ. 3d*** § 2699 (2002). The fact that reopening the judgment will delay a plaintiff's possible recovery does not, in itself, constitute prejudice. Generally, more is required, such as loss of evidence, difficulties in discovery, or the greater possibility for fraud or collusion. ***Id.*** There is no reason to believe that any such circumstances exist in the instant case and therefore Plaintiff will not be prejudiced by setting aside the Default Judgment.

Based upon the foregoing reasons, the Defendants respectfully request that the Court grant their Motion to Aside Default Judgment.

Respectfully submitted,

**ATWOOD, MALONE, TURNER & SABIN, P.A.**

By [signature]

STEVEN L. BELL
P.O. Drawer 700
Roswell, NM 88202-0700
(505) 622-6221
(505) 624-2883 FAX

**JUDY A. PITTMAN**
City Attorney
City of Roswell, New Mexico
P.O. Box 1838
Roswell, NM 88202-1838
(505) 624-6700, ext. 206
(505) 624-6709 FAX
ATTORNEYS FOR DEFENDANTS

I hereby certify that a true and correct copy of the foregoing pleading was mailed to opposing counsel of record this 10th day of January, 2003.

STEVEN L. BELL

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
TINA ***CLAWSON*** and PATRICIA NEIS,
Plaintiffs,
vs. No. CIV 99-379 MV/ RLP
***SOUTHWEST*** CARDIOLOGY ASSOCIATES, P. A.,
a corporation, and WILLIAM BENGE, M. D., an individual,
Defendants.
MEMORANDUM OPINION AND ORDER
THIS MATTER is before the Court on Defendants Motion to Reconsider Motion to Vacate and Set Aside Default, filed March 1, 2000 [Doc. No. 78]. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken in part and will be granted in part and denied in part.
BACKGROUND
On March 23, 1999, Plaintiffs Tina ***Clawson*** and Partricia Neis filed their complaint in
New Mexico state court, and served the summons and complaint on Defendants ***Southwest*** Cardiology Associates, P. A. ( SWCA) and William Benge, M. D. Specifically, Dr. Benge was personally served two copies of the complaint, one indicating service on him individually and the other as agent for SWCA The day after he was served, Dr. Benge gave one copy of the summons and complaint to SWCAs chief executive officer ( CEO), who, in turn gave that copy to defense counsel. The copy given to defense counsel was directed to Dr. Benge in his personal
¼2 -2-
capacity. The SWCA CEO told Defense counsel that Dr. Benge was not an agent for service of process for SWCA, that the CEO was the corporations registered agent and that the CEO had not been served. Accordingly, defense counsel believed service had only been made on Dr. Benge as an individual and that SWCA had not yet been served. In actuality, Dr. Benge was SWCAs registered agent and the March 23 service on Dr. Benge was good service on SWCA.
On April 2, 1999, counsel for Defendants entered appearances for the record, and removed the case to this Court. On April 21, 1999, Plaintiffs sought and obtained Clerks Entry of Default against Defendants for failure to plead or otherwise defend and moved for an Entry of Default Judgment. Defendants received notice of Entry of Default on April 22, 1999, and received Plaintiffs Motion for Default Judgment on April 26, 1999. Defendants filed their answer and counterclaim on April 26, 1999. On April 27, 1999, this Court issued a Default Judgment Order against Defendants who immediately filed a Motion to Vacate and Set Aside the Judgment of Default. By Memorandum Opinion and Order filed June 23, 1999, this Court denied the motion to vacate.
Defendants then moved for an amendment to the Courts Order certifying the denial of the default for interlocutory appeal and again opposing the Courts entry of default judgment. In its Memorandum Opinion and Order filed February 18, 2000, the Court denied Defendants motion, concluding that it had properly entered default for Defendants failure to file an answer. Defendants, represented by new counsel, now urge the Court to reconsider its denial of Defendants motion to vacate and set aside default.

EXHIBIT A

¼3 -3-
DISCUSSION
I. Authority for Reconsideration
As a threshold issue, the Court must determine whether it can in fact reconsider its previous decision not to set aside the default against Defendant and, if so, what the source of its authority is. Defendants motion for reconsideration does not cite to a specific rule justifying reconsideration. Plaintiffs argue that the two bases for reconsideration are Federal Rule of Civil

Procedure 59( e) and Rule 60( b), that a Rule 59( e) order must be filed within ten days of the judgment, and that because that deadline was not met in this case, the Court must consider Defendants motion under the Rule 60( b) standard. Defendants disagree, asserting that Rule 60( b) allows reconsideration of final judgments, but in this case they seek reconsideration of an interlocutory judgment. Accordingly, Defendants assert that as a non- final order, the Courts decision can be revised any time before the entry of a final judgment pursuant to Rule 54( b).
Plaintiffs are incorrect that Rule 60( b) governs Defendants motion. Rule 60( b) expressly applies to final judgment[ s], but there is no final judgment here. A default judgment is not final until the amount of damages has been determined. See Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 97 (2nd Cir. 1993).
Rule 54( b), the rule upon which Defendants rely, governs judgments as to part of a case involving multiple claims or multiple parties. It permits a district court to make a judgment as to less than all claims or parties final, and therefore immediately appealable. The Rule goes on to provide,
In the absence of such determination and direction, any order or other form of decision however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to
¼4 -4-
any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
FED. R. CIV. P. 54( b) (emphasis added). Though this is not a case in which the Court has entered an order affecting only some of the multiple parties and claims, the Court does have authority to reconsider its June 23, 1999 Memorandum Order. District courts have a general discretionary authority to reconsider a interlocutory decision. See Riggs v. Scrivner, Inc., 927 F. 2d 1146, 1148 (10th Cir. 1991) (citing Anderson v. Deere & Co., 852 F. 2d 1244, 1246 ( 10th Cir. 1988)); Greene v. Union Mutual Life Ins. Co. of America, 764 F. 2d 19, 22 (1st Cir. 1985) (quoting Dow Chemical, USA v. Consumer Prod. Safety Comm n, 464 F. Supp. 904, 906 (W. D. La. 1979)); United States v. Jerry, 487 F. 2d 600, 604 (3d Cir. 1973); Shabazz v. Cole, 69 F. Supp. 2d 210, 226 (D. Mass 1999). As the Supreme Court explained long ago, if an interlocutory decree be involved, a rehearing may be sought at any time before the final decree, provided due diligence be employed and a revision be otherwise consonant with equity. John Simmons Co., v. Grier Bros. Co., 258 U. S. 82, 90-91 (1922).
II. Standard to Apply in Reconsidering Motion
The parties also dispute whether Rule 55( c) or Rule 60( b) applies in this case. Rule 55( c) provides, [ f] or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60( b). FED. R. CIV. P. 55( c). According to the terms of the rule, the good cause standard applies to set aside default whereas Rule 60( b) allows a district court to grant relief from a default judgment if specific grounds are met. The Court acknowledges that the confusion in this case is its own making in that it entered an order of default judgment before determining damages. However,
¼5 -5-
this is not a final judgment, but should rather be treated as an order of default. See Enron Oil Corp., 10 F. 3d at 97. The Court will enter final judgment once it ascertains what relief it will grant. Id. Because there is no final judgment in this case, Rule 55( c) is the standard for the Court to apply in considering Defendants motion.
In determining whether good cause exists to set aside default under Rule 55( c), courts consider whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. Johnson v. Dayton Elec. Mfg. Co., 140 F. 3d 781, 784 (8th Cir. 1998) (citing cases). The parties in this case focus on the first and third factors.

III. Analysis

With these principles in mind, the Court turns to the grounds for reconsideration. The crux of Defendants motion is that the Court has never been provided a comprehensive account of the facts and misapprehended the facts in concluding that Defendants failure to respond was culpable conduct. Plaintiffs reply that Defendants have failed to offer any new facts or to argue any new points, that the Court did not misapprehend the facts, and that the default should stand.

A. SWCA

As to Defendant SWCA, Defendants argue that the Court wrongly concluded that counsel must have known that SWCA had been served the summons and complaint because Dr. Benge was a registered agent for SWCA and had been served with two copies of the complaint one marked for Dr. Benge in his personal capacity and one as agent for SWCA. Defendants point out that the copy passed on to counsel was the one marked personal capacity and that therefore Defendants counsel was under the mistaken but good faith belief that SWCA had not yet been

¼6 -6-

served. This was the cause of SWCAs failure to file a responsive pleading in a timely fashion. Moreover, Defendants assert, they worked to cure the default as soon as they were made aware of it. On this record, Defendants argue there is no basis to find that their failure to answer was willful or deliberate justifying default.

The Court feels compelled to agree with Defendants argument. The Court was rightly incredulous that Defendants counsel could make so many mistakes, chief among them being counsels failure to determine who the agents for service of process for her client were and her failure to discover that Dr. Benge had received two copies of the complaint, one marked for SWCA. That counsel could not have known that her client had been properly served, and that counsel could fail to file a responsive pleading for SCWA after entering an appearance and removing the case to this Court is noteworthy. This incredulity led to the Courts determination that Defendant SWCA must have known it had been served. Also affecting the Courts initial decision not to set aside the default was counsels inappropriate conduct in calling the Courtroom Deputy repeatedly asking her to remove the default pleading from the Courts desk. Despite these errors and improprieties, the Court finds that default is too harsh a result for what was in the end a fourteen-day delay in filing an answer in the case. Defense counsel at the time submitted an affidavit stating that she received the copy of the summons marked for Dr. Benge in his personal capacity and honestly did not believe SWCA had been served. Upon reconsideration the Court finds that these were inadvertent errors not warranting default. Review of the case law certainly supports this conclusion. It is clear that there is a

judicial preference for adjudication on the merits. Johnson, 140 F. 3d at 784 (quoting Oberstar v. F. D. I. C., 987 F. 2d 494, 504 (8th Cir. 1993)). Moreover, as explained by one court

¼7 -7-

of appeals, because defaults are generally disfavored and are reserved for rare occassions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, good cause . . . should be construed generously. Enron Oil Corp., 10 F. 3d 96 (citing cases). The Supreme Court has held, in applying the stricter standard of Rule 60( b), that excusable neglect encompasses late filings cased by inadvertence, mistake or carelessness. Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership, 507 U. S. 380, 388 (1993). Courts of appeal, applying both Rule 60( b) and the less stringent standard of Rule 55( c), applicable here, have reversed default where delays were caused by mistakes rather than intentional acts. See, e. g., Johnson, 140 F. 3d at 783-85 (holding trial court abused its discretion in not setting aside default where defendant failed to answer because of poor communication between the defendant and his insurer, defendant cured its default within one day of learning of the mistake, and defendants conduct was not intentional); In re Jones Truck Lines, Inc. 63 F. 3d 685, 687-88 (8th Cir. 1995) (default reversed where though delay in filing answer was within the partys control, the reason for the delay did not constitute a willful flaunting of the

deadline); United Coin Meter Co. v. Seaboard Coastline R. R., 705 F. 2d 839, 845-46 (6th Cir. 1983) (holding trial court abused its discretion in not setting aside default where record did not support a finding that default was the result of willful conduct). Several district court decisions have specifically found default was not appropriate where a
party made a mistake regarding service or the deadline for a responsive pleading. See, e. g., Canfield v. VSH Restaurant Corp., 162 F. R. D. 431, 434 (N. D. N. Y. 1995 ) (default not willful where defendant did not realize papers constituted formal service); Wayland v. District Court, 104 F. R. D. 91 (D. Me. 1985) (default not proper where defendant did not know papers served by
¼8 -8-
certified mail constituted valid legal service of process); Momah v. Albert Einstein Med. Ctr., 161 F. R. D. 304, 308 (E. D. Pa. 1995) (court found counsels conduct in misunderstanding the rules about the time by which to file an answer was neglectful, but did not constitute willful behavior warranting default); Freeze-Dry Prods., Inc. v. Metro Park Warehouse, Inc ., 160 F. R. D. 156, 158-59 (D. Kan. 1995) (setting aside default where defendants failure to respond was premised on a good faith belief that the motion to reconsider tolled the deadline for filing an answer).
Another factor supporting setting aside the default are Defendants efforts to cure the default. See 999 v. Cox & Co., 574 F. Supp. 1026, 1029 (E. D. Mo. 1983) ([ D] efendants prompt action upon discovering that they were in default is further evidence that the default of defendants and the actions of their counsel was not willful). Defendants counsel stated that she worked to cure the default diligently as soon as she was made aware of it. She discovered that default had been entered on April 22, 1999, a Thursday, and worked all day Friday and over the weekend to file Defendants answer and counterclaim on Monday, April 26 and their Motion to Vacate and Set Aside the Judgment of Default Tuesday, April 27.
The other element contested by the parties is prejudice to the Plaintiffs. The Court is mindful that it is setting aside default a year after declining to do so. The Court is somewhat reluctant to set aside the default as to SWCA because it knows that Plaintiffs have relied on the Courts entry of default in preparing for a damages hearing and assuming that the liability issues have been resolved. However, the initial prejudice to the Plaintiffs caused by Defendants failure to timely answer was only fourteen days. Moreover, the Court feels it is in the interests of justice to correct its determination that SWCA was willful and set aside the default the position strongly supported by the case law, rather than to let an improper default stand. Moreover, the
¼1
Though Ms. Brattons affidavit indicates she calendared Dr. Benges answer date for April 22, another pleading suggests that the answer date was calendared for April 23. Defs Br. in Supp. of Mot. to Vacate and Set Aside Default, at 5.
9 -9-
likelihood that the parties would move forward with the damages hearing now only to have the parties sent back to the drawing board were the default issue to be reversed on appeal militates in favor of setting aside default as to SWCA.
B. Dr. Benge
As to Dr. Benge, Defendants argue that the Court misapprehended the facts in failing to consider that Dr. Benges failure to answer was a result of counsels calendaring error. Defendants prior counsel did submit an affidavit stating that she mistakenly calendared Dr. Benges response date as April 22
1
though the answer was in fact due on April 12. However, in
addition to missing the correct answer date, Dr. Benge also missed the date calendared by his counsel, not filing an answer until April 26. Given this, the Court is at a loss as to how the calendaring error caused the late filed answer. Dr. Benge was clearly validly served on March 23 and Defendants have failed to show, as they did as to SWCA, that Dr. Benges failure to answer was an inadvertent mistake. Because Defendants offer no other explanation for Dr. Benges

default and because it is not logical that calendaring a response date of April 22 resulted in Dr. Benge not filing an answer until April 26, the Court will not set aside the default as to Dr. Benge.

IV. Sanctions

Plaintiffs urge this Court to grant them attorney fees and costs incurred in responding to this motion, arguing that Defendants have unreasonably multiplied this litigation warranting an award of fees and costs under 28 U. S. C. § 1927 or Rule 11. Plaintiffs argue that Defendants merely restate previous facts and arguments already ruled on by this Court. Defendants argue

¼10 -10-

that sanctions are not warranted in a case such as this where they are trying to avoid an otherwise inevitable appellate issue and to forestall further default proceedings that would be mooted by a successful appeal. Defendants Reply, at 2.

Given that the Court has granted Defendants motion in part it does not find that sanctions are warranted in this case for unreasonably multiplying litigation. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Motion to Reconsider Motion to Vacate and Set Aside Default [Doc. No. 78] is hereby granted in part and denied in part. The Court hereby sets aside default and vacates the default judgment as to Defendant SWCA.

DATED this 21st day of June, 2000.

__________________________

MARTHA VZQUEZ
U. S. DISTRICT JUDGE

Attorneys for Plaintiffs:
Attorneys for Defendants:
Christopher Moody Theresa Parrish
Whitney Warner Robert St. John
Edward Ricco

Court Home
District Court Home
Attorney Main Menu
Electronic Filing
Search

Please mail acemaster@nmcourt.fed.us, with comments.

TRANSAMERICA, ET AL. V. GRINDMASTER, ET

<DOCKET-NUM> 90-0530

<TYPE> CIVIL

<NAME> TRANSAMERICA, ET AL. V. GRINDMASTER, ET

<JUDGE> JOHN E. CONWAY

<DATE-FILED> 1991/05/08

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRANSAMERICA INSURANCE COMPANY OF

CALIFORNIA, and GUADALUPE CAFE, INC.,

a California corporation,

Plaintiffs,

vs. CIV. No. 90-530 JC

GRINDMASTER CORPORATION, CORY

CORPORATION, ARA/CORY REFRESHMENT

SERVICES, INC., DELTROL CONTROLS, INC.,

and FARMER BROTHERS COMPANY,

Defendants,

and

ARA/CORY REFRESHMENT SERVICES, INC.,

Third Party Plaintiff,

vs.

HERSHEY FOODS CORPORATION,

Third Party Defendant.

MEMORANDUM OPINION AND ORDER



THIS MATTER comes on for consideration of defendant Grindmaster Corporation's Motion to Withdraw and Strike Defendant Grindmaster Corporation's Offer of Judgment to Plaintiff Guadalupe Cafe for Clerical Mistake, filed on February 1, 1991. The Court, having reviewed the memoranda of the parties and being otherwise fully advised in the premises finds that the motion is well-taken and will be granted.

It is understood by nearly everyone involved in the legal profession that inevitably there are moments in a lawyer's career when stress and time constraints forebodingly intensify just when it is most necessary to attend to the most minute of details. It
is under such circumstances that mistakes are made. Recognizing the inevitability of being confronted with a mistake that compromises the ends of justice, the drafters of the Federal Rules of Civil Procedure codified equitable principles vesting the courts with the power to rectify such errors in Rule 60 of the Federal Rules of Civil Procedure.

Grindmaster's motion presents the Court with precisely the situation anticipated by the drafters of Rule 60. According to the affidavits attached to Grindmaster's pleadings, counsel for Grindmaster intended to make an Offer of Judgment to both plaintiffs in this matter, Transamerica Insurance Company of California and Guadalupe Cafe, Inc. The Offer of Judgment was to be contingent upon acceptance by both plaintiffs. However, through an error characterized by Grindmaster as a "clerical mistake" the Offer of Judgment was extended only to plaintiff Guadalupe Cafe. Furthermore, the Offer of Judgment did not contain language communicating Grindmaster's intention that the offer be contingent upon acceptance by both plaintiffs. Despite being informed by counsel for Grindmaster of the error, Guadalupe Cafe accepted the Offer of Judgment and vigorously contests Grindmaster's Motion to Withdraw and Strike.

Rule 68 of the Federal Rules of Civil Procedure governs the making of Offers of Judgment. Although Rule 68 does not address under what circumstances an Offer of Judgment may be withdrawn, Guadalupe Cafe correctly notes that it is generally accepted that an Offer of Judgment is irrevocable during the ten-day period following the date on which an Offer of Judgment is made. See Colonial Penn Insurance Co. v. Coil, 887 F.2d 1236, 1240 (4th Cir. 1989). However, Guadalupe Cafe incorrectly assumes that Grindmaster's motion is subject to analysis only under Rule 68 of the Federal Rules of Civil Procedure.

Rule 60 of the Federal Rules of Civil Procedure provides for relief from judgments. Rule 60(a) provides for relief from judgments containing clerical mistakes; Rule 60(b) provides for relief from judgments because of mistake, inadvertence, ***excusable neglect***, etc. An ***Offer*** of ***Judgment***, once accepted, is a final judgment. See Mallory v. Eyrich, 922 F.2d 1273, 1277-1279 (6th Cir. 1991). As such, it is subject to the attack under Rule 60. See id. at 1280-1281; Shores v. Sklar, 885 F.2d 760, 765 n.3 ( 11th Cir. 1989)(Johnson, J., specially concurring). Thus, that under Rule 68 an ***Offer*** of ***Judgment*** is irrevocable during the initial ten day period
is irrelevant to the question before this Court. Grindmaster's motion is an attack on a final judgment made pursuant to Rule 60 and is governed by the law developed thereunder.

It is unclear from Grindmaster's pleadings whether it is seeking relief pursuant to Rule 60(a) or Rule 60 (b). The Motion to Withdraw is captioned "for Clerical Mistake." Since Rule 60(a) governs motions based on clerical mistakes, this caption directs the Court's attention to Rule 60(a). Nevertheless, in its pleadings Grindmaster states only that its motion is based on Rule
60 and cites to both Rule 60(a) and 60(b). The Court will treat the motion as one made under both Rule 60(a) and 60(b).

Grindmaster characterizes its failure to direct the Offer of Judgment to both plaintiffs as a "clerical mistake" within the meaning of Rule 60(a ). The Tenth Circuit has said that, "Rule 60(a) may be relied on to correct what is erroneous because the thing spoken, written, or recorded is not what the person

intended to speak, write or record. Rule 60(a) may not be used to change something that was deliberately done, even though it was later discovered to be wrong. A correction under Rule 60(a) should require no additional proof." McNickle v. Bankers Life and Casualty Company, 888 F.2d 678, 682 (10th Cir. 1989)(emphasis in original)( citations omitted). Applying this standard to this matter, the Court finds that the error in question cannot be characterized as a "clerical mistake" within the meaning of that term as it is used in Rule 60(a). The mistake at issue involves more than a mere typographical error, miscalculation, or minor but material omission. Here, counsel for Grindmaster failed completely to indicate Grindmaster's intent that the Offer of Judgment be addressed to both plaintiffs and that the offer was contingent upon acceptance by both plaintiffs. As is indicated by the affidavits attached to Grindmaster's pleadings, additional proof is required to establish both the existence and nature of the mistake.

Rule 60(b)(1) provides that the Court may provide relief from final judgment because of "mistake, inadvertence, surprise, or ***excusable neglect***." Fed.R.Civ.P. 60(b)(1). While relief under this rule is characterized as "extraordinary," the Tenth Circuit has consistently stated that the Rule 60(b) "should be liberally construed when substantial justice will thus be served." Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983)(quoting Thompson v. Kerr-McGee Refining Corp., 660 F.2d 1380, 1385 (10th Cir. 1981)). The decision to grant relief under Rule 60(b) lies within the sound discretion of the Court. Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc., supra, 715 F.2d at 1445. The movant bears the burden of establishing mistake, surprise or inadvertence. Id. Here, Grindmaster, through its affidavits, has established that the failure to address the ***Offer*** of ***Judgment*** to both plaintiffs was due to inadvertence and mistake. Given the nature of the mistake, it would be unjust to deny the relief sought in this matter.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED:

The Motion to Withdraw and Strike Defendant Grindmaster Corporation's Offer of Judgment to Plaintiff Guadalupe Cafe for Clerical Mistake be, and hereby is, granted.

DATED: May 8, 1991.

Judge John E. Conway
UNITED STATES DISTRICT JUDGE

FOR PLAINTIFFS: Carol J. Ritchie, Esq. FELKER & ISH, P.A. Santa Fe, New Mexico

FOR DEFENDANT GRINDMASTER CORPORATION Susan Andrews, Esq. and William C. Madison, Esq. MONTGOMERY & ANDREWS, P.A. Albuquerque, New Mexico

FOR DEFENDANT & THIRD PARTY PLAINTIFF ARA/CORY REFRESHMENT SERVICES, INC. Carlos G. Martinez, Esq. BUTT, THORNTON & BAEHR, P.C. Albuquerque, New Mexico

FOR DEFENDANT FARMER BROTHERS COMPANY Holly A. Hart, Esq. WHITE, KOCH, KELLY & MCCARTHY, P.A. Santa Fe, New Mexico

FOR DEFENDANT DELTROL CONTROLS, INC. Gordon J. McCulloch, Esq. BRADLEY & MCCULLOCH, P.A. Albuquerque, New Mexico

FOR THIRD PARTY DEFENDANT HERSHEY FOODS CORPORATION Robert G. McCorkle, Esq. RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A. Albuquerque, New Mexico <>

| Court Home | District Court Home | Attorney Main Menu | Electronic Filing | Search |

Please mail acemaster@nmcourt.fed.us, with comments.